S. Samuel Di Falco, S.
In this accounting proceeding a daughter, born out of wedlock, alleges that she is decedent’s sole distributee and claims the balance of his intestate estate now in the hands of the Public Administrator. The Attorney-General of the State of New York, cited in behalf of unknown distributees, has appeared in the proceeding and joins the Public Administrator in resisting her claim. If an illegitimate child does not inherit and no other distributees appear, the fund will ultimately escheat.
At the hearing, the mother of the claimant testified as to her parentage. There were introduced in evidence the claimant’s birth certificate bearing decedent’s name as father, an affidavit made by the decedent at birth admitting paternity, and the daughter’s public school report cards signed by the decedent as father. Counsel for the claimant conceded that there were no paternity proceedings to establish filiation. It is claimant’s contention that paragraphs (2) and (3) of subdivision (a) of EPTL 4^1.2 are unconstitutional. The law under attack reads : “ § 4 — 1.2 Inheritance by or from illegitimate persons, (a) For the purposes of this article * * * (2) An illegitimate child
is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child. (3) The existence of an agreement obligating the father to support the illegitimate child does not qualify such child or *816 his issue to inherit from the father in the absence of an order of filiation made as prescribed by subparagraph (2).”
This statute finds its source in section 83-a of the Decedent Estate Law, which was passed by the Legislature in 1965, effective March 1, 1966.
Before extending the rights of an illegitimate child to inherit from his father, the Legislature gave careful consideration to the rights of all persons who would inherit an intestate estate. The Fourth Report of the Temporary State Commission on the Law of Estates (pp. 265-267 [1965]) says: “ The recommendations of this report are intended to grant to illegitimates in so far as practicable rights of inheritance on a par with those enjoyed by legitimate children while protecting innocent adults and those rightfully interested in their estates from fraudulent claims of heirsMp and harassing litigation instituted by those seeking to establish themselves as illegitimate heirs. This end is achieved by equating legitimates and illegitimates for the purpose of inheritance from the mother and maternal kindred, and granting the illegitimate a limited right of inheritance from his father subject to statutory safeguards. The adoption of the recommendations proposed in this report will safeguard the interests of the illegitimate in the proceeds of a successful action for wrongful death, and estates passing by will or devise, as well as in estates descending and being distributed by operation of the law of intestate succession.
* * *
“ The utmost caution should be exercised to protect innocent men from unjust accusations in paternity claims. To avoid this hazard, no informal method of acknowledgment has been provided for in the recommendations. While a formal acknowledgment alone would be a considerable advance over the statutes of most states allowing inheritance from an acknowledging father, it is felt that the recommendation here made gives even more protection against such hazard. The procedure in other states provides merely that any informal witnessed writing establishing the relationship of father and child between the deceased and the claimant is sufficient to establish paternity, allows paternity to be established after the death of the father, thus affording considerable opportunity for falsification of evidence and inviting harassing litigation. These problems are eliminated by requiring a court order establishing paternity during the lifetime of the father.
* * *
‘ ‘ A further safeguard is to be found in the statute of limitations recommended which bars a suit to establish heirship not *817 brought within two years after the birth of the child. The two-year period is currently prescribed by section 517 of the Family Court Act in .paternity proceedings. The statute of limitations will not apply to voluntary acknowledgments.”
The Legislature was attempting to provide fair and reasonable standards for proving rights to participate in an estate. There are obvious reasons for different provisions in respect of the mother’s estate and that of the putative father. The Legislature found good reason for requiring a court determination of paternity and for prescribing a limitation of time.
In Matter of Ortiz (60 Misc 2d 756) Surrogate Sobeb of Kings County considered the rights of illegitimates to inherit and in a learned opinion held that a statute which barred illegitimates from sharing the damages sustained by reason of the wrongful death of their father was unconstitutional. In that case the court mentioned that where the illegitimate claimed a share of an estate by reason of intestacy, its ruling would be different. The court further reasoned that New York’s intestacy statute which barred illegitimate children and their fathers from inheriting from each other, unless there had been an order of filiation within two years of birth, had a rational purpose to assure paternity in intestacy claims!
In a recent decision, Labine v. Vincent (401 U. S. 532 [March 29, 1971]), the Supreme Court of the United States specifically denied illegitimates the right to take under State laws of succession and distinguished a claim to share in an estate by reason of intestacy from claims to share in the proceeds from wrongful death actions as in Levy v. Louisiana (391 U. S. 68) and Glona v. American Guar. Co. (391 U. S. 73). In Labine v. Vincent, as to the rights of illegitimates, the majority opinion stated (p. 537): “ These rules for intestate succession may or may not reflect the intent of particular parents. Many will think that it is unfortunate that the rules are so rigid. Others will think differently. But the choices reflected by the intestate succession statute are choices which it is within the power of the State to make. The Federal Constitution does not give this Court the power to overturn the State’s choice under the guise of constitutional interpretation because the Justices of this Court believe that they can provide better rules. ’ ’
Over the years, by way of Federal legislation, there has been recognition of the rights of illegitimates and an expansion of the definition of “ children ” to include illegitimates, who have proved paternity and dependency. The Social Security Act, the Longshoremen’s and Harbor Workmen’s Compensation Act, and the Veterans’ Benefits Acts have been so amended. Illegi *818 tímate children have recovered under Federal life insurance plans, yet the Supreme Court of the United States has steadfastly refused to upset any State law of succession denying illegitimates such rights. (See “ Labine v. Vincent: Louisiana Denies Intestate Succession Rights to Illegitimates ’ ’, 38 Brooklyn L. Rev. 428.)
As late as April 24, 1972, in Weber v. Aetna Cas. Co. (406 U. S. 164) Mr. Justice Powell, speaking for the majority of the Supreme Court of the United States, held that the Workmen’s Compensation Law of Louisiana discriminated against illegitimates and violated the equal protection clause of the Fourteenth Amendment. He spoke of the right to share in intestacy and approved the ruling in Labine v. Vincent (401 U. S. 532, supra) saying (p. 170): “ That decision [Labine v. Vincent] reflected, in major part, the traditional deference to a State’s prerogative to regulate the disposition at death of property within its borders. * * * The Court has long afforded broad scope to state discretion in this area.” Justice Powell pointed out that in all cases of intestate succession the decedent might easily have modified his daughter’s position by making a will and that the burden of illegitimacy could have been in this way lightened.
My former colleague, Surrogate Aarons, in Matter of Hendrix (68 Misc 2d 439 [Nov. 18, 1971]), concluded that the New York statute required a reasonable substantiation of the claim of paternity only by way of an order of filiation. It does not impose an improper condition and does not result in a discrimination constituting denial of equal protection of the law to an illegitimate. I am in accord with what was aptly said (p. 443): “ It well may be that our Legislature could have assumed a more liberal view in order to permit proof of paternity by evidence less formal than an order of filiation. It does seem that the requirement that a legal proceeding be instituted within a limited time is somewhat restrictive and overly protective of putative fathers. Had the Legislature chosen to assume a more sympathetic attitude towards the plight of illegitimates it could have dictated a less stringent time limitation, such as the fixation of the time as the lifetime of the alleged parent. The statute might well have provided for recognition of the child through acknowledgment on the part of the parent or through proof of cohabitation of the parents. While it is true that a broader statute, permitting proof of paternity on a factual basis at any time, would present problems to a trial court, particularly questions as to the credibility of witnesses, there still seem to remain in our statute certain outdated moral concepts and remnants of *819 the unfortunate practice of visiting the sins of the parents upon the children.” It is for the Legislature and not the court to overcome the restrictive elements of this statute. Accordingly it is the determination of this court that upon the proof adduced at the hearing, the claimant has not established her status as a distributee of the decedent and as a consequence her objections are dismissed.
Submit decree on notice.