GREEN, APPELLANT, *v.* WOODARD, APPELLEE.

[Cite as Green v. Woodard (1974), 40 Ohio App. 2d 101.]

(No. 32491—Decided May 9, 1974.)

*Mr. Austin T. Klein,* for appellant.
*Mr. Garry B. Schwartz,* for appellee.

KRENZLER, J.  The plaintiff filed a complaint on December 27, 1971 in the Common Pleas Court of Cuyahoga County alleging that she is the daughter of Liston Thomas, who died on May 11, 1971, and the stepdaughter and an

heir at law of Emmaline Thomas, the deceased wife of Liston Thomas, who died on September 7, 1971.

Plaintiff further alleges that on August 27, 1971, the defendant, Elijah J. Woodard, acquired certain real estate from said Emmaline Thomas who was incompetent and comatose at the time she executed the deed, and that she lacked capacity to execute said deed. Plaintiff alleges that she is entitled to a share of the real estate as the step-daughter under the half-and-half statute and otherwise as the daughter of the deceased Liston Thomas.

Defendant filed interrogatories which were answered by the plaintiff. Also plaintiff's deposition was taken.

On May 18, 1972 the defendant filed an answer alleging that the plaintiff does not have the capacity to bring this action because she is not related to Liston Thomas in such a manner as to permit her to benefit from the half-and-half statute, R. C. 2105.10. Further defendant alleges that on or about June 11, 1971 the Probate Court of Cuyahoga County in the estate of Liston Thomas, Case No. 772623 transferred said property in a manner which would preclude plaintiff from having any interest in said property.

Defendant filed a motion to dismiss, which was overruled.

On December 19, 1972, the defendant filed a motion for summary judgment and attached an affidavit of Attorney Garry Schwartz, portions of the deposition of the plaintiff, a birth certificate of the plaintiff, and a brief.

The plaintiff filed a brief in opposition to the motion for summary judgment and no other documents.

Defendant's arguments were that at the time the plaintiff was born, her natural mother was not married to the person she alleges to be her natural father, namely, Liston Thomas, and that he never formally acknowledged the plaintiff as his child, nor did he adopt her.

It is the plaintiff's position that her natural father was Liston Thomas, who died on May 11, 1971, leaving as survivors a spouse, Emmaline, who was not the plaintiff's mother, and the plaintiff and that at his death he was seized of real property at Keyes Avenue, Cleveland, Ohio. The

plaintiff alleged that she is entitled to a share of the property under R. C. 2105.06(B), the statute of descent and distribution, as the child of Liston Thomas, or in the alternative under R. C. 2105.10, the half and half statute.

The trial court granted the defendant's motion for summary judgment and plaintiff has taken this appeal and assigns as error:

The Court of Common Pleas erred to the prejudice of plaintiff-appellant in granting defendant-appellee's motion for summary judgment.

Plaintiff-appellant and defendant-appellee will be referred to as the plaintiff and defendant respectively.

It is plaintiff's contention that R. C. 2105.06 and R. C. 2105.17 are unconstitutional as being invidious discrimination in violation of the Fourteenth Amendment to the United States Constitution.

Defendant contends that the plaintiff cannot prevail because the statute of descent and distribution, R. C. 2105.06, and the half-and-half statute, R. C. 2105.10, do not allow illegitimate children to inherit from and through the father. In order for an illegitimate child to inherit as a child he[1] must have been adopted under R. C. 3107.13, or acknowledged under R. C. 2105.18, or he can take through the mother under R. C. 2105.17, but he cannot take from and through the father.

I.

Much has been written concerning the discriminatory practices and treatment of illegitimate children under feudal and common law. In the past illegitimate children were treated as "nothing" and reasons given for such discrimination were to: (1) preserve feudal tenure; (2) discourage illegitimate relationships; (3) avoid artificial presumptions of intent; (4) encourage legitimate family relationships; (5) protect the rights of legitimate children.

Application of these theories has only resulted in dis-

---

[1] For the purposes of this opinion the pronoun "he" encompasses both male and female illegitimates. References to "child" or "children" refer to the male and female, and singular and plural, interchangeably.

crimination against illegitimates and has not reduced illegitimate births, but to the contrary there has been an increase in illegitimate births. Rather than again discuss in detail these past discriminatory practices, reference is made to Judge Leo Jackson's opinion and also to the concurring opinion in *Butcher* v. *Pollard* (1972), 32 Ohio App. 2d 1. Also see Chief Justice O'Neill's dissenting opinion in *Baston* v. *Sears* (1968), 15 Ohio St. 2d 166, 169[2] and Justice Schneider's discussion in *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228.

## II.

In this case we are dealing with the broad general subject of the treatment of illegitimate children under Ohio law and more specifically whether the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates that all illegitimate children are to be considered as "children" under R. C. 2105.06, the Ohio statute of descent and distribution.

Many statutes such as wrongful death, workmen's compensation, and descent and distribution make reference to the words "child" or "children" but they do not contain words of explanation or limitation.

Historically, courts have held that the word "child" or "children" appearing in statutes without words of limitation or explanation are given their natural and normal meaning which means legitimate children only. Ohio courts have held that unless there is some language in the statute itself which shows a contrary intent on the part of the legislature, the word "child" or "children" means legitimate children. See *Miller* v. *Industrial Commission* (1956), 165 Ohio St. 584; *Staker Guardian* v. *Industrial Commission* (1933), 127 Ohio St. 13; *Creisar* v. *State* (1917), 97 Ohio St. 16; *Bonewit* v. *Weber* (1952), 95 Ohio App. 428.

Pertinent statutes dealing with the subject of illegitimate children under the Ohio statutory scheme are the bastardy, acknowledgment and adoption statutes and the statute of descent and distribution.

---

[2]Overruled by *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228.

R. C. 3111.17 the bastardy statute, provides that if an accused confesses in court or if a jury finds him guilty he shall be adjudged the reputed father of the illegitimate child and the court will award reasonable support and maintenance of the child until he becomes 18 years of age.

R. C. 3107.13 provides for legal rights after adoption and this includes the legal rights of a child born illegitimate and who is subsequently adopted. For all purposes governing inheritance of and succession to real and personal property, a legally adopted child shall have the same status and rights and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock, with a few minor exceptions not relevant to the issue in this case.

A child born illegitimate may also be legitimated through acknowledgment by his father under the provisions of R. C. 2105.18. If a man has children by a woman and subsequently marries her and acknowledges the child, the child will be legitimate. Further, a natural father of a child who files an application in probate court of the county where he resides acknowledging that the child is his, and upon consent of the mother and a finding by the probate court that the applicant is the natural father, and it is for the best interest of the child, the child shall be considered as if born in lawful wedlock.

Therefore, after an illegitimate child is adopted under R. C. 3107.13 or acknowledged under R. C. 2105.18, such child is considered as born in lawful wedlock and is no longer an illegitimate child, and is considered legitimate for practically all purposes. Adoption and acknowledgment under the foregoing statutes require affirmative legal action by the father and do not happen automatically by operation of law. Thus, a natural father can legitimate his illegitimate child by either adoption or acknowledgment under R. C. 3107.10 and R. C. 2105.18 respectively.

In Ohio a person has the option of disposing of his property on death by taking the affirmative action of making a will (Chapter 2107); or if he does not so act, the state presumes his intent and makes a will for him, which

is called the statute of descent and distribution (R. C. 2105.06).

The statute of descent and distribution is a succession statute which sets forth the priorities of those persons taking property of a decedent when he does not make a will, and among those mentioned in this statute are ''children.''

R. C. 2105.17 states that a bastard[a] child can inherit from and through its mother as if born in lawful wedlock, but is silent as to succession from and through the father. This statute in effect modifies and expands the definition of the word ''children'' in R. C. 2105.06, the statute of descent and distribution, to include illegitimate children inheriting from and through their mother; but it does not change the child's status from illegitimate to legitimate.

Absent R. C. 2105.17 the word ''children'' in R. C. 2105.06 would include only legitimate children, which means children born in lawful wedlock, or those adopted under R. C. 3107.13 or acknowledged under R. C. 2105.18.

By enacting R. C. 2105.17, providing that bastards shall be capable of inheriting or transmitting inheritance from and through the mother as if born in lawful wedlock and by the fact that it is silent as to bastards inheriting from and through the father, a distinction was created in the treatment of illegitimate children under the statute of descent and distribution.

We must determine whether the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that once Ohio recognized some illegitimate children as ''children'' under R. C. 2105.06 the definition of ''children'' under that statute includes all illegitimate children.

The entire area dealing with the problem of illegitimate children, especially under the statute of descent and distribution, is very complex. This is evidenced by the fact that there is no uniformity in state legislation. Some states treat all illegitimate children the same as legiti-

---

[a]The terms bastard and illegitimate children will be used interchangeably in this opinion.

mates;[4] some allow illegitimates to inherit only from and through the mother and are silent as to the father, such as in Ohio;[5] in other states no illegitimate child can be treated the same as a legitimate.[6]

In recent years attacks have been made on state court decisions interpreting the word "child" to mean only legitimate children. These attacks are based on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the argument is that this interpretation constitutes invidious discrimination.

The courts, Congress and state legislatures have been reexamining the law regarding illegitimate children, and substantial changes in attitude have taken place. The current trend is to recognize illegitimate children as being the same as legitimate children. This has been accomplished by legislative enactments recognizing rights of illegitimate children and also by court interpretation that the word "child" or "children" appearing in legislation means all "children," both illegitimate and legitimate.

Recent Ohio decisions have been favorable to illegitimate children. The Ohio Supreme Court recognized the right of a mother to bring an independent civil action in the Common Pleas Court for necessities for her illegitimate child. *Franklin* v. *Julian, supra.* Also, Ohio courts have interpreted an insurance contract containing the word "child" without words of explanation or limitation to mean all children, whether legitimate or illegitimate, *Butcher* v. *Pollard, supra.* The Ohio Supreme Court also held that under R. C. 2105.06(I), the Ohio statute of descent

---

[4]*Ore. Rev. Stat.* 109.060 (1953); *Ore. Rev. Stat.* 112.105 (1953); *N. D. Cent. Code* 56-01-05 (1960); *Ariz. Rev. Stat. Ann.* 14-2109 (1956); *N. Y. Est., Powers & Trust Law* §4-1.2 (McKinney, 1967); *Minn. Stat. Ann.* 525.172 (Supp. 1969); *Ind. Ann. Stat.* 29-1-2-7 (1972).

It is to be noted that some of these states require varying degrees of proof of paternity, but in each case the illegitimate is afforded the opportunity to offer such proof.

[5]*Ala. Code tit.* 16 §7 (1958); *Ga. Code Ann.* §113-904 (1959); *Mich. Stat. Ann.* 27.3178 (151) (1962); *Mass. Ann. Laws Ch.* 190 §5 (1969); *N. J. Stat. Ann.* §3A:4-7 (1951).

[6]*La. Civ. Code Ann.* arts. 206, 918, 919, 920 (West 1952).

and distribution, an illegitimate child was considered the stepchild of a man who married his mother. *Kest* v. *Lewis* (1959), 169 Ohio St. 317.

## III.

At the federal level, both legislative and court decisions have undermined the common-law rules which discriminated against illegitimates. One of the most significant areas of such action was an amendment to the Social Security Act in 1965 to enlarge the definition of "child" to permit illegitimate children to receive social security benefits if the insured individual acknowledged in writing that the applicant was his son or daughter, or there had been a decree by a court that he was the father of the applicant, or he had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter. 42 U. S. C. 416(h)(3)(A)(B)(C). In the case of a deceased individual the foregoing action must have been taken before his death.

Creating the aforementioned three categories of illegitimate children who may receive social security benefits is not invidious discrimination so as to render it in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as they are reasonably related to the purpose of the Act. *Perry* v. *Richardson* (6th Cir., 1971), 440 F. 2d 677; *Johnson* v. *Finch* (N. D., Texas, Dallas Div., 1972), 350 F. Supp. 945; *Watts* v. *Veneman* (D. C., 1971), 334 F. Supp. 482, rev'd in part, 476 F. 2d 529 (1973).

In analyzing an alleged denial of equal protection, the United States Supreme Court has utilized two tests depending upon the type of interest involved.

The first is the rational basis test. Under this test, a statutory classification is valid if it is rationally related to a legitimate state interest. The classification is afforded a presumption of constitutionality and will not be set aside if any set of facts reasonably can be conceived to justify it. Finally, the burden of showing that the statute is unconstitutional for want of a rational basis falls on the

party raising the challenge. Historically, this test has been used in the field of economic and social regulation.

The second is the compelling state interest test and under this standard, statutes which infringe on a "fundamental right" or which involve a "suspect classification" must be shown to serve a compelling state interest. There is a primacy for individual rights and when there is an invasion of these rights, the burden of demonstrating a compelling state interest falls on the state. As a result of this increased constitutional scrutiny, statutes which may have otherwise been upheld under the more lenient traditional Equal Protection standard (rational basis test) are frequently invalidated.

Several United States Supreme Court decisions have eroded discriminatory practices against illegitimates. Four attacks were made between 1968 and 1972 on Louisiana court decisions which held that the word "child" or "children" meant only legitimate children when it appeared in wrongful death statutes, workmen's compensation statutes and the statute of descent and distribution.

The United States Supreme Court held that the word "child" or "children" appearing in Louisiana's wrongful death and workmen's compensation statutes meant all children, legitimate and illegitimate. *Levy* v. *Louisiana* (1968), 391 U. S. 68, 20 L. Ed. 2d 436; *Glona* v. *American Guaran-*

---

In *Levy* v. *Louisiana, supra,* five illegitimate children brought an action for the wrongful death of their mother. The state courts held that the word "child" meant "legitimate child." The United States Supreme Court held that illegitimate children are clearly persons within the meaning of the Equal Protection Clause of the Fourteenth Amendment. A state may have broad power when it comes to making classifications, but it may not under the Equal Protection Clause of the Fourteenth Amendment draw a line which constitutes an invidious discrimination against a particular class, and the test is whether the line drawn is a rational one.

The Supreme Court held that legitimacy or illlegitimacy of birth has no rational relationship to the nature of the wrong allegedly inflicted upon the mother and that this statute constituted an invidious discrimination against the children. The statute was held unconstitutional and the children were allowed to maintain the wrongful death action.

*tee and Liability Ins. Co.* (1968), 391 U. S. 73, 20 L. Ed. 2d 441;[8] *Weber* v. *Aetna Casualty & Surety Co.* (1972), 406 U. S. 164, 31 L. Ed. 2d 768.[9]

[8] In *Glona* v. *American Guarantee and Liability Insurance Co., supra,* a mother brought an action for the wrongful death of her illegitimate son. The Supreme Court held that where the plaintiff in a wrongful death action is clearly the mother of the decedent, the state denies equal protection of the laws by withholding relief merely because the plaintiff's child was born out of wedlock. The court found that there was no possible rational basis for assuming that the cause of illegitimacy will be served if a mother is allowed to recover damages for the wrongful death of her illegitimate child.

[9] This case involved Louisiana's Workmen's Compensation Laws, which included only legitimate children, stepchildren, posthumous children, and acknowledged illegitimate children within the definition of "children" for purposes of recovery. Unacknowledged illegitimate children held the status of "other dependents" who could recover under the Workmen's Compensation Laws only if there were not enough surviving dependents in the preceding statutory classifications.

Two illegitimate children who did not receive any compensation attacked the statute as being unconstitutional.

The United States Supreme Court held that the state's denial of equal workmen's compensation recovery rights to dependent, unacknowledged illegitimate children violated the Equal Protection Clause of the Fourteenth Amendment because the statutory classification bore no rational relationship to any legitimate state interest, compelling or otherwise.

The Court held that a statutory classification must bear some rational relationship to a legitimate state purpose:

"The essential inquiry in all the foregoing cases is however, inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger? (p. 173) * * * The inferior classification of dependent unacknowledged illegitimates bears no significant relationship to those recognized purposes of recovery which workmen's compensation statutes commendably serve. * * * Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system * * *. (p. 175) * * * Obviously, no child is responsible for his birth, and penalizing the illegitimate child is an ineffectual—as well as an unjust —way of deterring the parent. * * * Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to the status of birth, whereas in this case the classification is justified by no legitimate state interest, compelling or otherwise." (p. 176)

Also see *Graham* v. *Richardson* (1971), 403 U. S. 365, 29 L. Ed. 2d 534; *Hunter* v. *Erickson* (1969), 393 U. S. 385, 21 L. Ed. 2d 616.

However, in deciding *Weber* the United States Supreme Court distinguished the case involving the statute of descent and distribution in which it held that discrimination between legitimate and illegitimate children was a reasonable classification and not invidious discriminaton. *Labine* v. *Vincent* (1971), 401 U. S. 532, 28 L. Ed. 2d 288.

In *Labine*, the Lousiana statute of descent and distribution barred an illegitimate child who was not legitimated from sharing equally with legitimate heirs in the father's estate. The statute was attacked as being in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution on the ground that there was no rational basis for the distinction made by statute between legitimate and illegitimate children. Under this statute no illegitimate person is treated the same as a legitimate person.

In a *five to four* decision the Supreme Court held that there was a rational basis for the statute in view of the State's interest in promoting family life and of directing the disposition of property left within the State, and such statutory scheme did not constitute an invidious discrimination against illegitimate children in violation of the Due Process and Equal Protection Clauses.

The plaintiff had argued that *Levy* and *Glona* supported his position, but the Supreme Court was not persuaded and noted that the action in *Levy* was based on tort while *Labine* involved the statute of descent and distribution.

The Supreme Court also marked the fact that *Levy* did not say that a state can never treat an illegitimate child differently than a legitimate offspring, and that Labine was not a case like Levy where the state has created an insurmountable barrier to the illegitimate child. The court found that the fact that an illegitimate child may be adopted, or bequeathed property in a will, gives him some opportunity at succession and these statutes do not bar the illegitimate child from inheriting anything from his father.

The holding in *Labine*, in effect, finds the distinction reasonable, not an invidious discrimination and, therefore, permissible.

In its dissent the minority thought the discrimination was clear and obvious, that there was no reasonable basis

for the distinction, and that the Louisiana intestate law plainly violated the Equal Protection Clause of the Fourteenth Amendment.

However, the United States Supreme Court further broke down the barriers to equal treatment between illegitimate and legitimate children in the areas of custody and support when it decided *Stanley* v. *Illinois* (1972), 405 U. S. 645, 31 L. Ed. 2d 551;[10] *Gomez* v. *Perez* (1973), 409 U. S. 535, 35 L. Ed. 2d 56.[11]

At first blush it would appear that *Labine* controls the decision in this case, but on closer scrutiny, it is noted that this case can be distinguished from *Labine* on two bases— (1) the Louisiana state statute of descent and distribution is substantially different from the Ohio statute. In Louisiana bastards cannot inherit from and through either the mother or father the same as legitimate children, *La. Civ. Code Ann.*, Art. 920 (West, 1952). Further, Louisiana does not treat any illegitimate the same as a legitimate. In Ohio,

---

[10]In *Stanley* v. *Illinois, supra,* under Illinois law the father of an illegitimate child was not included in the statutory definition of a "parent" and thus was subject to being deprived of the custody of his illegitimate child by dependency proceedings in which he was not entitled to a hearing as to his fitness as a parent. The United States Supreme Court held that an unmarried father has a right to a hearing to determine if he is in fact the parent of the illegitimate child and also on his parental qualifications as to custody.

[11]In another United States Supreme Court case *Gomez* v. *Perez, supra,* the mother of an illegitimate child in Texas sought to obtain financial support for her child from the child's natural father. Support was denied on the ground that under Texas law a natural father has no legal obligation to support an illegitimate child.

On appeal the Supreme Court held that under the Equal Protection Clause of the Fourteenth Amendment a state may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. Once a state posits a judicially enforceable right on behalf of children to needed support from their natural parents, there is under the Equal Protection Clause of the Fourteenth Amendment no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father was not married to the child's mother. For a state to deny such a right is illogical and unjust and the lurking problems with respect to paternity cannot be made into an impenetrable barrier which works to shield otherwise invidious discrimination.

R. C. 2105.17 provides that illegitimate children can take from and through the mother as if born in lawful wedlock; (2) the United States Supreme Court decided *Labine* on the basis that discrimination between legitimates and illegitimates in the statute of descent and distribution was a reasonable classification and not invidious discrimination in violation of the Equal Protection Clause to the Fourteenth Amendment of the United States Constitution. Ohio makes a distinction within the class of children it terms illegitmate.

The issue in this case is whether when Ohio enacted R. C. 2105.17 expanding the definition of "children" in R. C. 2105.06 to include some illegitimate children, the Fourteenth Amendment to the United States Constitution requires that the word "children" in R. C. 2105.06 includes all illegitimate children.

It is especially noted that there are two types of discrimination. There is discrimination between the classes, such as between legitimate children and illegitimate children, which was the issue decided in *Labine*. There is also discrimination within the class between various types of illegitimates, such as those illegitimates inheriting from and through the mother, and those inheriting from and through the father. It is this latter intra-class discrimination that is under attack in this case. The appellant in effect contends that since the Ohio Legislature decided that some illegitimate children would be treated as legitimate for the purpose of inheriting under the statute of descent and distribution, the Constitution requires that the word "children" contained in R. C. 2105.06 include all illegitimate children and that the failure to do this constitutes invidious discrimination in violation of the Fourteenth Amendment to the United States Constitution.

This is a valid argument. Once Ohio enacted R. C. 2105.17, expanding the definition of "children" in R. C. 2105.06 to include some illegitimates, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that the word "child" or "children" in R. C. 2105.06 includes all illegitimate children.

The composite of reasons given by some courts for not

permitting illegitimate children to be treated the same as legitimate children in interpreting statutes of descent and distribution when the statute contains the word "children" without words of explanation or limitation are that: (1) the devolution of property within a state rests within the discretion of a state, *Labine* v. *Vincent, supra*; *Strahan* v. *Strahan* (W. D. La. 1969), 304 F. Supp. 40, U. S. cert. den. 404 U. S. 949 (1971); *Watts* v. *Veneman, supra*; (2) illegitimate children are not completely discriminated against because they may be recognized and left property by will or be legitimated by adoption or acknowledgment, *Labine* v. *Vincent, supra; Weber* v. *Aetna Casualty and Surety Co., supra*; (3) proof of paternity is difficult *Blackwell* v. *Bowman* (1948), 150 Ohio St. 34, 37; *Miller* v. *Laird* (D. C. Civil Div. 1972), 349 F. Supp. 1034, 1044; *In re Estate of Pakarinen* (1970), 287 Minn. 330, 178 N. W. 2d 714, decided before the Minn. Statute (*Minn. Stat. Ann.* 525, 172 (1969)) was amended in 1971; (4) spurious and fraudulent claims may be brought, *Beaty* v. *Weinberger* (5th Cir., 1973), 478 F. 2d 300, 306-308; *Jiminez* v. *Richardson* (N. D. Ill. E. D., 1973), 353 F. Supp., 1356; *Schmoll* v. *Creecy* (1969), 54 N. J. 194, 254 A. 2d 525, see dicta p. 528.

None of these arguments validate a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under the statutory scheme in Ohio. When Ohio decided to recognize the rights of certain illegitimates to inherit property under the statute of descent and distribution and ignored the rights of other illegitimate children and did not even afford them an opportunity to prove paternity, this constituted invidious discrimination.

Further, the fact that an illegitimate child may be left property by will or be legitimated by adoption or acknowledgment is not the principal issue in this case. Once a child who was born illegitimate is acknowledged or adopted this child is no longer illegitimate for the purposes of the statute of descent and distribution. The fact that a decedent may or may not have taken some affirmative action in leaving property to an illegitimate child by will, or by

legitimating such child by acknowledgment or adoption, is not the issue in this case. We are not concerned with the effect on legitimate or illegitimate children by action or inaction of their father. We are dealing in this case with the Ohio statute of descent and distribution, and whether the word "child" or "children" as applied in the Ohio statutory scheme includes all children.

It is not the statute of wills, the acknowledgment statute or the adoption statute that are under attack in his case. It is the interpretation of the word "child" or "children" appearing in R. C. 2105.06 in view of Ohio's enactment of R. C. 2105.17 recognizing the rights of certain illegitimate children to take as if born in lawful wedlock that is the principal issue in this case.

The foregoing reasons given by other courts for deciding that the word "child" or "children" appearing in statutes of descent and distribution means only legitimate children is not applicable under the Ohio statutory scheme. When the state legislature made a policy decision that some illegitimate children should take the same as legitimates under the statute of descent and distribution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution applies and all illegitimate children must be treated the same. Such application means that the word "child" or "children" appearing in R. C. 2105.06 encompasses all children, including all illegitimate children.

As to the argument regarding the difficulty of proving paternity, this is best answered by the following quotation by the United States Supreme Court in *Gomez* v. *Perez, supra,* at p. 60:

"We recognize the lurking problems with respect to proof of paternity. These problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."

Further, by analogy, if under *Stanley* v. *Illinois, supra,* an alleged parent of an illegitimate child must be given the right to prove that he is the father of such child for custody purposes, an illegitimate child should be given the

same right to prove paternity and thus be allowed to inherit as a "child" under the statute of descent and distribution.

It can be argued that a court determination of paternity is not proof absolute that a man is the father and that he may plead guilty to avoid embarrassment, or for some other reason. This could be said of the result of any court action settled or litigated. The purpose of a trial is to determine facts and the truth of the issues involved, and once decided, those issues are resolved.

Also, the argument is not valid that, if an illegitimate child were allowed to inherit from and through his father under the statute of descent and distribution, this would inspire suprious and fraudulent claims. This argument can be overcome by requiring proof of paternity in such cases by a high degree of proof such as clear and convincing evidence. Further, among the things that can be considered by a court is whether there was a determination of paternity by a court of competent jurisdiction within a reasonable period of time after the birth of the child and prior to the death of the father. See *In re Estate of Belton* (1972), 70 Misc. 2d 814, 335 N. Y. S. 2d 177; *In re Estate of Hendrix* (1971), 68 Misc. 2d 439, 326 N. Y. S. 2d 646; *Burnett* v. *Camden* (1970), 253 Ind. 354, 254 N. E. 2d 199, U. S. cert. den. 399 U. S. 901 (1970).

Some state courts have found it very easy to say that the word "child" or "children" appearing in statutes of descent and distribution means only legitimate children and it is not invidious discrimination not to consider illegitimate children as children. Unfortunately, these decisions merely state legal conclusions and give no reasons for the result and by so doing do not directly meet the issue. See *Wells* v. *Hames* (Tex. Civ. App. 1971), 464 S. W. 2d 393; *Pettiford* v. *Frazier* (1970), 226 Ga. 438, 175 S. E. 2d 549; *Succession of Bush* (1969 La.), 222 So. 2d 642.

The purpose of the statute of descent and distribution is to make a distribution for a decedent who dies intestate. Among those who inherit under the Ohio statute are "children." As stated above the legislature expanded and modified the word "children" to include illegitimate children

who inherit from and through the mother but was silent regarding illegitimate children inheriting from and through the father. There is no reasonable or rational relationship between the purpose of the statute and a classification that permits illegitimate children taking *only* from and through the mother. Excluding illegitimate children from intestate inheritance from and through the father is not reasonably related to the statutory purpose.

It is our holding that once Ohio adopted R. C. 2105.17, expanding and modifying the definition of "children" in R. C. 2105.06 to include some illegitimate children, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandated that the word "child" contained in R. C. 2105.06 include all illegitimate children and not just illegitimate children who take from and through the mother. To hold otherwise would constitute invidious discrimination. Also under the Ohio statutory scheme the word "children" contained in R. C. 2105.10, the half and half statute, includes all illegitimate children.

The material submitted by the parties clearly establishes that plaintiff was born on February 3, 1937 in Townsend, Georgia. The name on her birth certificate is Leslie Louise Haddie Mae Dingle. Her mother was not married at the time of her birth and no one was listed as her father on the birth certificate. Plaintiff's mother and her alleged father, Liston Thomas, were never married but her mother subsequently married a man by the name of Royal. Plaintiff testified that she was baptized Lessie Mae Thomas in 1947 at the Seventh Day Adventists Church in Lanford, Florida, but she does not have the baptism certificate. Plaintiff was 33 years of age before she brought the present action, which was seven months after Liston Thomas died. Further, plaintiff was never legitimated by adoption or acknowledgment and there was never a court determination of paternity in a bastardy action, a civil action for necessities or for any other purposes. Further, defendant did not admit or concede that the plaintiff is the illegitimate child of Liston Thomas, deceased.

If the plaintiff were the illegitimate child of Liston

Thomas, decedent, she would be considered a "child" under the statute of descent and distribution (R. C. 2105.06) and the half and half statute (R. C. 2105.10).

We conclude that the plaintiff is not, in fact, the illegitimate child of Liston Thomas, decedent, and therefore not a "child" under R. C. 2105.06. She is consequently not entitled to a share in his property under R. C. 2105.06, the statute of descent and distribution, or under R. C. 2105.10, the half and half statute.

Inasmuch as there was not a material issue of fact and the defendant was entitled to judgment as a matter of law, the trial court did not commit prejudicial error in granting defendant's motion for summary judgment.

*Judgment affirmed.*

MANOS, C. J., and JACKSON, J., concur.