Moore, Appellant, *v.* Dague, Exrx., et al., Appellees.

(No. 75AP-200—Decided October 7, 1975.)

*Messrs. Hilliard, Ramsey & Johnson,* for appellant.
*Mr. Mark Sladoje, Jr.,* for appellees.

Whiteside, J. Plaintiff appeals from a judgment of the Franklin County Court of Common Pleas dismissing his will contest action upon the grounds that he does not have standing to bring the action. Although plaintiff has not set forth a specific assignment of error, he does state in his brief:

"The only question for the Court to decide in this case is whether an illegitimate child may inherit from his natural father."

We accordingly assume and will consider this to constitute the assignment of error.

By his complaint, plaintiff alleges that he is the son of the decedent, Charles C. Barnes, and, accordingly, is the sole person who would be entitled to inherit his estate if the decedent had died intestate. Plaintiff further alleges that the paper admitted to probate is not the last will and testament of the decedent. The executrix of the estate filed a motion to dismiss the action upon the grounds that plaintiff is not an heir at law and does not have standing to maintain an action to contest the will. This motion was sustained by the trial court, and the action dismissed.

Although there are some procedural questions as to the manner of raising the issue presented, plaintiff has raised no objection with respect to the procedure and has conceded for the purposes of appeal that he claims to be the illegitimate son of the decedent. It further would appear that plaintiff is an adult since he brought this action on his own behalf.

Common law has considered an illegitimate child as *nullius filius*, the child of no one, and, therefore, not entitled to inherit from anyone. This common-law rule was modified in 1831 by statute, giving to the illegitimate child the right to inherit from his mother. By further amendment in 1853, the rule was further modified by statute so that now, in Ohio, an illegitimate child can inherit both from and through his mother. R. C. 2105.17.

It has remained the law of Ohio, unchanged by the statute of descent and distribution (R. C. 2105.06) that an illegitimate child cannot inherit from or through his natural father unless the father takes some steps during his lifetime to permit such inheritance. *Blackwell* v. *Bowman* (1948), 150 Ohio St. 34. The father may legitimatize an illegitimate child by afterwards marrying his mother and acknowledging the child as his. R. C. 2105.18. Children of an invalid marriage are legitimate. R. C. 2105.18. The na-

tural father of an illegitimate child may confer upon such child a right of inheritance from such father by several means: (1) by formal acknowledgement in probate court that the child is his with consent of the mother (R. C. 2105.18); (2) by designating the illegitimate child as his heir at law (R. C. 2105.15); (3) by adopting the illegitimate child; and (4) by making a provision for the child in his will.

Plaintiff contends that to interpret R. C. 2105.06 as continuing the common-law rule precluding an illegitimate child from inheriting from his natural father constitutes a denial of the equal protection of the law from the illegitimate child.

In recent years, the United States Supreme Court has found that the denial of certain rights to an illegitimate child constitutes an unconstitutional denial of the equal protection of the law. See *Levy* v. *Louisiana* (1968), 391 U. S. 68 (right of an illegitimate child to maintain an action for the wrongful death of his mother); *Glona* v. *American Guarantee & Liability Ins. Co.* (1968), 391 U. S. 73 (right of the mother of an illegitimate child to maintain an action for the wrongful death of such child); *Weber* v. *Aetna Casualty & Surety Co.* (1972), 406 U. S. 164 (right of an illegitimate child to workmen's compensation benefits for the death of his natural father); *Gomez* v. *Perez* (1973), 409 U. S. 535 (right of an illegitimate child to support from his natural father); and *Jimenez* v. *Weinberger* (1974), 417 U. S. 628, 94 S. Ct. 2496 (right of an illegitimate child to social security benefits flowing from the disability of his natural parent).

These cases invalidating laws distinguishing between legitimate and illegitimate children have been predicated in part upon the lament that a child is illegitimate through no fault of his own and should not be punished or denied rights solely because of the sin of his parents or a wrong inflicted upon his mother. There is nothing new about this lament, nor has it previously been unconsidered. In a case decided in 1854, involving the question of whether the legitimate children of the mother of an illegitimate child could inherit from the illegitimate child, Judge Ranney stated in

*Lewis* v. *Eutsler* (1854), 4 Ohio St. 355, at pages 358-359:.
"A man needs little more than his instincts to determine what the law ought to be in such a case. Perkey had no election whether he should be born legitimate or illegitimate. It was no fault of his that he was born illegitimate, and he had the same right as others, whose origin was more fortunate, to be judged by his own personal conduct, and not only protected in the enjoyment of what he should acquire while he lived, but to have what remained of it transmitted to his blood when he died. In his case, as in others, such security furnished the strongest possible stimulus to that industry and economy, upon which the prosperity of state depends; and, for the most cogent reasons, precluded the state from intervening to impair it.

"Very good reasons, founded upon public policy, and growing out of the uncertainty that must generally attend the paternity of the illegitimate child, can be given, for cutting him off from all connection with the paternal line. To this necessity, he must submit. But no doubt can exist as to the identity of the mother. The child is necessarily reared by her; and between them, as well as between the child and her other children, must grow up those strong ties which bind near kindred to each other. However sternly the law may declare there to be no relationship, nature will assert her supremacy, and stamp the declaration as unfounded.

"The most subtle ingenuity would fail to suggest even a plausible reason why these persons should not inherit to each other; and the state could in no way prevent it, and take the property from them, without incurring the imputation of gross injustice."

The United States Supreme Court has expressly held constitutional a state law denying an illegitimate child any right to inherit by intestate succession from his natural father. *Labine* v. *Vincent* (1971), 401 U. S. 532. Justice Black, speaking for the court, stated at pages 537-539:

"These rules for intestate succession may or may not reflect the intent of particular parents. Many will think that it is unfortunate that the rules are so rigid. Others will

think differently. But the choices reflected by the intestate succession statute are choices which it is within the power of the State to make. The Federal Constitution does not give this Court the power to overturn the State's choice under the guise of constitutional interpretation because the Justices of this Court believe that they can provide better rules. Of course, it may be said that the rules adopted by the Louisiana Legislature 'discriminate' against illegitimates. But the rules also discriminate against collateral relations, as opposed to ascendants and against ascendants, as opposed to descendants. Other rules determining property rights based on family status also 'discriminate' in favor of wives and against 'concubines.' The dissent attempts to distinguish these other 'discriminations' on the ground that they have a biological or social basis. There is no biological difference between a wife and a concubine nor does the Constitution require that there be such a difference. * * * Some of these discriminatory choices are perhaps more closely connected to our conceptions of social justice or the ways in which most dying men wish to dispose of their property than the Louisana rules governing illegitimate children. It may be possible that some of these choices are more 'rational' than the choices inherent in Louisiana's categories of illegitimates. But the power to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States and the people of Louisiana to the legislature of that State. Absent a specific constitutional guarantee, it is for that legislature, not the life-tenured judges of this Court, to select from among possible laws. * * *''

Justice Black distinguished *Levy, supra,* upon the basis that the state law created no insurmountable barrier to the illegitimate child's inheriting from her natural father, pointing out various means, under Louisiana law, by which the father could have provided for his illegitimate child. In a recent decision, the Eighth District Court of Appeals stated that the word ''children,'' as used in the statute of descent and distribution (R. C. 2105.06), should be inter-

preted as including all children, both legitimate and illegitimate, whether inheriting from and through their mothers or natural fathers, in order to comport with the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, distinguishing *Labine, supra,* and relying upon the other above-cited United States Supreme Court decisions. *Green* v. *Woodard* (1974), 40 Ohio App. 2d 101.

The Court in *Green* stated that it distinguished *Labine* on two bases, but actually there is only one—that Louisiana has no law similar to R. C. 2105.17, providing that illegitimate children can inherit from and through the mother as if born in lawful wedlock. The court reasoned that to make this distinction within the class of illegitimate children constitutes invidious discrimination in violation of the equal protection clause.

The Court of Appeals for the eighth district recognized that under *Labine* there may be discrimination as to the right of inheritance from natural parents as between legitimate children and illegitimate children. The court reasons, however, that to give illegitimate children any right of inheritance discriminates against them because they have not been given full rights of inheritance. The court reasons that this creates two classes of illegitimate children. We cannot accept such reasoning. There are not two distinct classes of illegitimate children created by R. C. 2105.17. *All* illegitimate children are given the right to inherit from and through their mothers as if they were legitimate. Under existing common law and R. C. 2105.06, *all* illegitimate children are denied the right to inherit from their natural fathers by intestate succession in the absence of some action by such natural father. R. C. 2105.17 does not create two classes of illegitimate children but, rather, treats all illegitimate children the same.

On the other hand, in *Labine,* the Supreme Court recognized and found no invidious discrimination in Louisiana law which created classes of illegitimate children with respect to their rights of inheritance from their natural father. Like Ohio law, Louisiana law provides certain

methods which the natural father may utilize to enable his illegitimate children to inherit from him. The two classes of illegitimate children created are: (1) those for whom the natural father has taken the necessary steps to entitle them to inherit from him, and (2) those for whom the natural father has taken no such steps. The Supreme Court did not find this "discrimination" between classes of illegitimate children to constitute invidious discrimination, in violation of the equal protection clause. Furthermore, we can find no invidious discrimination in the state's giving each illegitimate child "half a loaf," rather than none, that is the full right of inheritance from and through his mother, but no right to inherit from or through his father, unless the father has made provision therefor.

In *Weber, supra*, the Supreme Court expressly distinguished *Labine*, stating at pages 170, 171, with respect thereto:

"* * * That decision reflected, in major part, the traditional deference to a State's prerogative to regulate the disposition at death of property within its borders. * * * The Court has long afforded broad scope to state discretion in this area. Yet the substantial state interest in providing for 'the stability of * * * land titles and in the prompt and definitive determination of the valid ownership of property left by decedents,' * * * is absent in the case at hand.

"Moreover, in *Labine* the intestate, unlike deceased in the present action, might easily have modified his daughter's disfavored position. * * * The burdens of illegitimacy, already weighty, become doubly so when neither parent nor child can legally lighten them."

In *Jimenez, supra*, the Supreme Court did find discrimination between classes of illegitimate children to constitute unconstitutional discrimination. However, it is stated in the opinion at page 2501:

"In each of the examples just mentioned, the child is by statute 'deemed dependent' upon the parent by virtue of his or her status and no dependency or paternity need be shown for the child to qualify for benefits. However, non-

legitimated illegitimates in appellants' position, who cannot inherit under state law and whose illegitimacy does not derive solely from a defect in their parents' wedding ceremony, are denied a parallel right to the dependency presumption under the Act. Their dilemma is compounded by the fact that the statute denies them any opportunity to prove dependency in order to establish their 'claim' to support and, hence, their right to eligibility. * * *''

In *Levy, Gomez, Weber,* and *Jimenez,* the United States Supreme Court dealt with the rights of an illegitimate child arising from his dependency upon his natural parent; whereas, *Labine* dealt with the issue of the right of an illegitimate child to inherit from his natural father. The court has apparently distinguished between dependency and inheritance. This is accented by the following statement in *Weber,* the case in which the court expressly distinguished *Labine,* at pages 169-170:

''* * * The legitimate children and the illegitimate children all lived in the home of the deceased and were equally dependent upon him for maintenance and support. * * * The unacknowledged illegitimates * * * are *dependent children,* and as such are entitled to rights granted other *dependent children.*''

Thus, the court has expressly held that the state may not discriminate between rights granted dependent children upon the basis of whether they are legitimate or illegitimate. On the other hand, the Supreme Court has expressly held that a state may grant rights of inheritance to legitimate children and deny similar rights to illegitimate children and may create classes of illegitimate children, with respect to the right to inherit from their natural parents.

There are compelling state interests involved in the determination of descent and distribution which are not present in the determination of the rights of dependent children. An illegitimate child who claims a right to intestate succession may or may not be, or ever have been dependent upon the natural father and may be well into adulthood at the time the right is claimed. The state interest prompted by the fear of spurious claimants to the estate of

a claimed natural father is much greater in the case of intestate succession than it is in the case of a claimed right of support predicated upon dependency. The mere number of years that may have elapsed is itself a factor. A momentary indiscretion by the natural father in his youth may give rise to a claim to intestate succession at the natural father's death fifty or more years later by a purported illegitimate child whom the purported father never knew existed. On the other hand, if the natural father knows of the existence of the illegitimate child and wishes to make provision for such child, Ohio law provides him several means of doing so.

Furthermore, our laws on descent and distribution, rather than imposing upon one the state's view of who should inherit his estate, attempts to reflect the presumed intention of decedents who do not otherwise express their wishes as to who shall succeed to their estates. The statute of descent and distribution, rather than generating a distinction between legitimate and illegitimate children, tends to reflect the probable intent of individuals who are themselves constitutionally free to draw that line and who presumptively subscribed to the view of the statute by omitting to direct otherwise by will or other available means.

We find no invidious discrimination constituting an unconstitutional denial of the equal protection of the law in the application of the Ohio law denying to the illegitimate any right to inherit from the natural father, unless the father has provided for such inheritance. Except for precluding the disinheritance of a spouse, Ohio law leaves each person free to determine for himself who shall succeed to his estate by inheritance. A person may either execute a will expressing those wishes or determine to permit his estate to descend in accordance with the statute of descent and distribution. It has long been clear in Ohio that, in the absence of some provision made by the father, an illegitimate child has no right of inheritance from the father under the statute of descent and distribution. To change this law at this time without notice to the decedent, giving him an opportunity to make a will if the judicially amended statute does

not reflect his wishes, is not consistent with the philosophy of Ohio law that a person may determine succession to his estate at his death.

It is not the function of this court to describe whether the better rule would be that illegitimate children have the right to inherit from their natural father or that this would constitute the probable intent of a natural father not making a will or otherwise providing for such children. Rather, provisions for inheritance by illegitimate children from their natural fathers is a matter that the court must leave to the legislature and the natural fathers themselves. A rule of law so well understood in this state since the inception of statehood—long before that recognized as the common law—should not casually be set aside by the courts under the guise of enforcing the constitutional right to equal protection.

The law does "discriminate" between legitimate and illegitimate children with respect to the right to inherit from their natural fathers. It also "discriminates" between illegitimate children as to such right of inheritance from their natural fathers, depending upon the expressed wishes of the natural fathers. However, we find no invidious discrimination rising to constitutional stature in such classifications, since they express long-time societal attitudes and the presumed intent of the natural father who is free to provide otherwise. If societal attitudes have changed to such a degree that the law should now be that illegitimate children have the right to inherit from their natural fathers unless the father disinherits them by will, this is a matter which should be given the due deliberation of the legislative process, rather than determined by judicial process, by a court in a case where the input from the people as to their desires and the pros and cons of such action are not possible. Intestate succession is one of the few remaining examples of a long recognized state interest in the promotion of the family through the marriage relationship. Although there are those who advocate the elimination of the importance of marriage in the family relationship, if our societal attitudes toward the importance of marriage are

to be discarded or changed, it should be accomplished through the means of the legislative process, rather than through judicial fiat.

We all deplore the stigma so often attached to the illegitimate who had no choice in his origin and whose position is no fault of his own. However, our concern for the illegitimate does not justify our ignoring the separation of powers and substituting our judgment for that of the legislature as to what the law of Ohio should be. Courts are not super-legislatures, whose function it is to enact those laws which it feels the legislative bodies have unwisely failed to enact. There is little that cannot be rationalized as required by constitutional provisions if one engages in unbridled efforts to promote his own personal views. However, in the judiciary, judicial restraint is essential. We begin with a presumption of the validity of legislative acts. We find such acts to be unconstitutional only where there is a clear violation of some constitutional provision. If ours is to remain a government of law rather than of men, judges must refrain from implementing their own views of what the law should be, contrary to long established common law or statutory law, under the guise of implementing some constitutional provision, even though we may rationalize a basis for doing so. Judges must accept the self-evident fact that the collective judgment of the judges of a court as to what the law should be can be no better than the collective judgment of the legislature as to what the law should be. Judges must be mindful that the collective judgment of the legislature is more apt to express the desires of the people, which is so essential to the maintenance of a democracy and a republican form of government. It is only where there are obvious excesses or clear impingements of individual rights that the courts can be justified in interfering with the will of the majority of the people, as expressed by the legislative bodies. We find no such obvious excess or clear impingement of rights with respect to the Ohio law of descent and distribution.

Pursuant to R. C. 2741.01, a will contest action may be brought only by one who has a direct pecuniary interest

in the estate of the putative testator that would be defeated or impaired if the will admitted to probate is a valid will. *Steinberg* v. *Central Trust Co.* (1969), 18 Ohio St. 2d 33. An illegitimate child does not *per se* have such an interest in the will of his natural father and, thus, has no standing to maintain a will contest action. Since plaintiff claims no basis for his right to maintain this will contest action other than his claim that he is the illegitimate son of the testator, the trial court did not err in finding that plaintiff has no standing to maintain the action.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

McCormac, J., concurs.
Holmes, J., concurs in the judgment only.