IN RE MINOR OF MARTIN ET AL.

[Cite as In re Minor of Martin (1977),
51 Ohio App. 2d 21.]

(No. 35131—Decided March 17, 1977.)

*Mr. Engene Sidney Bayer,* for appellant Ge Ge Lou Martin.

KRENZLER, J. The appellant, Ge Ge Martin (a/k/a Ge Ge De Jesus), filed a complaint in the Juvenile Court of Cuyahoga County, alleging one Angelo L. Ortiz to be the reputed father of her child, Julia Louise De Jesus, born on May 24, 1971. At the time of the child's birth, the appellant was married to one Reuben De Jesus whose name appears on the birth certificate as the father of the child. Subsequent to the child's birth, the appellant and Reuben De Jesus were divorced.

The case was tried before a jury on October 20, 1972, and a verdict was returned against Angelo L. Ortiz who was ordered to make payments for the support of Julia and to pay past care and maternity expenses of the appellant.

The appellant then requested the Department of Health of the state of Ohio to change the birth certificate of the child to show Angelo L. Ortiz as the natural father. Her request was denied on the basis that the requirements of R. C. 2105.18,[1] the legitimation statute, had not been satisfied. The appellant next brought an action in the United States District Court for the Northern District of Ohio seeking to have R. C. 2105.18 declared unconstitutional. The District Court dismissed the case on the basis that the appellant had not attempted to file an application in probate court for legitimation under R. C. 2105.18.

The appellant then filed an application in the Probate Court of Cuyahoga County on October 10, 1973, to legitimate Julia Louise De Jesus. On January 16, 1974, a referee in the probate court, after conducting a hearing, denied the appellant's application holding that there had been no

---

[1]R. C. 2105.18 was amended effective January 1, 1976, however, the changes do not affect the decision in this case. The current text of R. C. 2105.18 is:

"When a man has a child by a woman [and] (sic) before or after the birth intermarries with her, the child is legitimate. The issue of parents whose marriage is null in law are nevertheless legitimate.

"The natural father of a child may file an application in the probate court of the county in which he resides, in the county in which the child resides, or the county in which the child was born, acknowledging that the child is his, and upon consent of the mother, or if she is deceased or incompetent, or has surrendered custody, upon the consent of the person or agency having custody of the child, or of a court having jurisdiction over the child's custody, the probate court, if satisfied that the applicant is the natural father, and that establishment of the relationship is for the best interest of the child, shall enter the finding of fact upon its journal, and thereafter the child is the child of the applicant, as though born to him in lawful wedlock."

The discussion in this case is confined to the provision in the second paragraph of R. C. 2105.18 relating to the method of legitimation requiring the filing of an application in probate court.

compliance with R. C. 2105.18. The referee stated that R. C. 2105.18 provides that an illegitimate child may be legitimated only by the intermarriage of the parents subsequent to the birth of the child or by the filing of an application in probate court by the natural father acknowledging such child as his. The appellant filed objections to the report of the referee denying the appellant's application to legitimize Julia. On June 24, 1975, the probate court, after a hearing, overruled the appellant's objections and sustained the report of the referee. On July 24, 1975, the appellant filed a notice of appeal to this court assigning as error:

"The Probate Court erred in denying appellant's application for legitimization of the minor child of the parties."

Once again, this court is called upon to decide a case in which discrimination is alleged against an illegitimate child. As stated in *Green* v. *Woodard* (1974), 40 Ohio App. 2d 101, 103:

"Much has been written concerning the discriminatory practices and treatment of illegitimate children under feudal and common law. In the past, illegitimate children were treated as "nothing" and reasons given for such discrimination were to: (1) preserve feudal tenure; (2) discourage illegitimate relationship; (3) avoid artificial presumptions of intent; (4) encourage legitimate family relationships; (5) protect the rights of legitimate children.

"Application of these theories has only resulted in discrimination against illegitimates and has not reduced illegitimate births, but to the contrary there has been an increase in illegitimate births. Rather than again discuss in detail these past discriminatory practices, reference is made to Judge Leo Jackson's opinion and also the concurring opinion in *Butcher* v. *Pollard* (1972), 32 Ohio App. 2d 1. Also see Chief Justice O'Neill's dissenting opinion in *Baston* v. *Sears* (1968), 15 Ohio St. 2d 166, 169 and Justice Schneider's discussion in *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228." (Footnote omitted.)

The legislatures and courts recently have been reexamining the law regarding illegitimate children. Substantial

changes in attitude have taken place. The current trend is to recognize illegitimate children as being the same as legitimate children. This has been accomplished by legislative enactments recognizing rights of illegitimate children and also by court interpretation of statutes.[2]

In the present case, we are concerned with the Ohio legitimation statute, R. C. 2105.18, which provides in relevant part that the natural father of an illegitimate child may file an application in probate court acknowledging that the child is his. Upon consent of the mother and satisfaction by the probate court that the applicant is the natural father and that the establishment of the relationship is for the best interests of the child, the probate court shall enter the finding of fact upon its journal. Thereafter, the child is the child of the applicant as though born to him in lawful wedlock.

The principal question to be determined in this case is whether the foregoing statute is to be interpreted narrowly as decided by the probate court or whether the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Section 2, Article 1 of the Ohio Constitution require a broader interpretation which would give all illegitimate children an opportunity to be legitimated either upon application and acknowledgment by the natural father or upon application by the child and proof of the identity of the natural father in a court of law.

R. C. 2105.18 is subject to at least three possible interpretations. These are:

(1) The basis of the probate court's decision is that legitimation of an illegitimate child is a matter for the state

---

[2]*E. g.*, *Jimenez* v. *Weinberger* (1974), 417 U. S. 628, 41 L. Ed. 2d 363; *Gomez* v. *Perez* (1973), 409 U. S. 535, 35 L. Ed. 2d 56; *Weber* v. *Aetna Casualty & Surety Co.* (1972), 406 U. S. 164, 31 L. Ed. 2d 768; *Stanley* v. *Illinois* (1972), 405 U. S. 645, 31 L. Ed. 2d 551; *Glona* v. *American Guarantee and Liability Ins. Co.* (1968), 391 U. S. 73, 20 L. Ed. 2d 441; *Levy* v. *Louisiana* (1968), 391 U. S. 68, 20 L. Ed. 2d 436; *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228; *Kest* v. *Lewis* (1959), 169 Ohio St. 317; *Green* v. *Woodard* (1974), 40 Ohio App. 2d 101; *Butcher* v. *Pollard* (1972), 32 Ohio App. 2d 1.

legislature which decided its method and manner when it enacted R. C. 2105.18. Legitimation under R. C. 2105.18 can be accomplished in two ways: by intermarriage of the natural parents before or after the birth of the child or by an application by the natural father acknowledging that he is the father, coupled with the consent of the mother, and approval by the probate court. These procedural steps are mandatory and unless accomplished, a child cannot be legitimated under R. C. 2105.18.

(2) Appellant's argument is that whenever a man is determined to be a "reputed father" of the child in a bastardy proceeding in the juvenile court under R. C. 3111.17 the mother is given the authority to make the application required by R. C. 2105.18 on behalf of the natural father as his agent. This gives the probate court jurisdiction and authority to entertain the application to legitimate the child under R. C. 2105.18.

(3) A third possible interpretation involves a constitutional issue. Since the Ohio Legislature enacted the legitimation statute, R. C. 2105.18, providing that an illegitimate child may be legitimated, all illegitimate children must be afforded an opportunity to be legitimated. This is mandated by the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Section 2, Article I of the Ohio Constitution. Legitimation cannot be limited to cases wherein the father first acknowledges that he is the natural father of the child.

It is our view that the appellant's argument, the second alternative discussed above, that a juvenile court determination that a man is a "reputed father" under R. C. 3111.-17 gives her authority to make application on his behalf and acknowledge that he is the "natural father" under R. C. 2105.18, is not valid.

Juvenile court proceedings under R. C. 3111.17 are conducted only to determine a "reputed father" for the purpose of obtaining support of the child and the payment of medical expenses. There is nothing in R. C. 3111.17 that would convert a "reputed father" into a "natural father" for legitimation purposes under R. C. 2105.18. The legis-

lature chose to distinguish between a "reputed father" for the purpose of support under R. C. 3111.17 and a "natural father" for the purpose of legitimation under R. C. 2105.-18. Therefore, a determination of a "reputed father" under R. C. 3111.17 does not convert that finding into a finding of a "natural father," and this does not give the mother authority either as agent for the father or by operation of law to file the application for legitimation under R. C. 2105.18 and acknowledge that the alleged father is the "natural father." To adopt the appellant's argument would be to distort the foregoing statutes beyond their intended meaning and purpose.

We will next consider the first and third possible interpretations together. It is our view that the narrow position taken by the probate court in its interpretation of R. C. 2105.18 constitutes invidious discrimination in violation of the equal protection of law guaranteed by the Fourteenth Amendment of the United States Constitution and Section 2, Article I of the Ohio Constitution. It has been held that a state can, under some circumstances, treat illegitimate children differently than legitimate children where the distinction in treatment is rationally related to a legitimate state interest. *Labine* v. *Vincent* (1971), 401 U. S. 532, 28 L. Ed 2d 288. We do not have that situation before us, however, but have a case similar to *Green* v. *Woodard, supra*. In that case, we noted that there are two types of discrimination relating to illegitimate children, namely discrimination between legitimate children and illegitimate children and discrimination between various classes of illegitimate children. As in *Green* v. *Woodard, supra* we are again holding that discrimination between classes of illegitimate children violates the equal protection provisions of the United States Constitution and the Ohio Constitution where there is no rational basis for the discriminatory treatment.[3]

---

[3] *But see, Moore* v. *Dague* (1975), 46 Ohio App. 2d 75. This case was decided by the Court of Appeals for Franklin County and is in conflict with *Green* v. *Woodard, supra.*

It is noted that R. C. 2105.18 has both substantive and procedural aspects. The Ohio Legislature made the substantive decision to allow legitimation by enacting R. C. 2105.18. Procedurally, the statute sets forth the method by which legitimation may be accomplished. It requires an application by the father with an acknowledgment that he is the natural father, consent by the mother, and approved by the probate court. It is with the procedural aspects of R. C. 2105.18 that the difficulty arises because some illegitimate children are denied the opportunity to become legitimated.

A construction of R. C. 2105.18 which limits the availability of the legitimation process to only those illegitimate children whose fathers choose to initiate the procedure would render the statute unconstitutional. Under such a construction those illegitimate children whose fathers do not initiate legitimation through acknowledgment are denied the opportunity to become legitimated. Because there is no rational basis for this distinction in treatment, a legitimation statute that denies the opportunity to be legitimated to some illegitimate children only because their fathers choose not to initiate the procedure violates the mandate of the Equal Protection Clauses of the United States and Ohio Constitutions. The statutory infirmity as to procedure, however, does not require that R. C. 2105.18 be declared unconstitutional because we conclude that the statute must be expanded in its application to afford all illegitimate children the opportunity to become legitimated. When a child files an application for legitimation under R. C. 2105.18, it is not necessary to have either acknowledgment by the natural father or consent by the mother, but the child must prove by clear and convincing evidence the identity of the natural father. If the probate court is satisfied that the alleged father is the natural father and that establishment of this relationship is for the best interest of the child, it shall enter this finding of fact upon its journal and thereafter the child is the child of the natural father as though born to him in lawful wedlock. Under this construction, R. C. 2105.18 complies with the requirements of the

Equal Protection Clauses of the United States and Ohio Constitutions.

We are not unmindful of the fact that proof of a "natural father" may be difficult, if not impossible, absent acknowledgment. Difficulty of proof, however, is not a valid reason for depriving a child of the opportunity to become legitimated. See *Gomez* v. *Perez, supra; Stanley* v. *Illinois, supra*.

Further, the argument that the foregoing interpretation invites spurious and fraudulent claims can be overcome by a requirement that proof of a natural father be by clear and convincing evidence rather than by a preponderance of the evidence.[4]

It is not a new or novel concept in the United States that a natural father may be determined and a child legitimated in court proceedings without acknowledgment by the father. Several states have recently enacted legislation that permits legitimation by a court adjudication of paternity other than by acknowledgment by the father.[5] These proceedings are in addition to legitimation by adoption and legitimation by acknowledgment by the natural father.

It is our holding that because the Ohio Legislature adopted R. C. 2105.18 providing for legitimation of an illegitimate child, the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Section 2, Article I of the Ohio Constitution mandate that every illegitimate child be afforded the opportunity to become legitimated by filing an application for legitimation and by proving by clear and convincing evidence the identity of the child's natural father. If the probate court is

---

[4]*See Green* v. *Woodard, supra* at 116.

[5]Alaska Stat. 25.20.050 (1962); Ariz. Rev. Stat. 14-2109, 36-326 (1974); Cal. Civil Code 7010 (Deering, Supp. 1976); Cal. Health & Safety Code 10450 (Deering, Supp. 1976); Fla. Stat. Ann. 382.21, 732.108 (West, 1973); Minn. Stat. Ann. 525.172, 144.177, 257.29 (West, 1970); N. M. Stat. Ann. 12-4-39 (1953); N. Y. Est., Powers & Trusts 4-1.2 (McKinney, 1967); N. Y. Pub. Health Law 4138 (McKinney, Supp. 1975); N. D. Cent. Code 30.1-04-09, 14-17-14 (1976); N. D. Cent. Code 23-02.1-18 (Supp. 1975); Tex. Family Code Ann. Title 2, Chapter 13 (Vernon, Supp. 1976).

satisfied that the person named in an application for legitimation under R. C. 2105.18 is the natural father and that the establishment of this relationship is for the best interest of the child, the court shall enter the finding of fact upon its journal and thereafter the child is the child of the person named in the application as though born to him in lawful wedlock.

The appellant's assignment of error is well taken in that the Probate Court of Cuyahoga County erred in denying the appellant an opportunity to prove by clear and convincing evidence that Angelo L. Ortiz is the natural father of Julia Louise De Jesus and that establishment of this relationship is for the best interest of the child.

The judgment of the probate court is reversed and this case is remanded for further proceedings consistent with this opinion.

*Judgment reversed.*

DAY, P. J., concurs.
PARRINO, J., dissents.