JOURNAL ENTRY AND OPINION
Angel Vaughan appeals from a judgment of the Cuyahoga County Probate Court denying her motions to re-open the Estate of William Vaughan, to vacate the March 15, 1982 court order amending decedent's list of heirs, and to surcharge the Safeco Insurance Company of America, contending the court erred in overruling her motion to re-open the estate and in awarding attorney fees of $1125 and costs of $303 against her. After reviewing the matter, we have concluded the cases of In re Martin
(1977), 51 Ohio App.2d 21, and White v. Randolph (1979), 59 Ohio St.2d 6, control the outcome of this matter and compel us to affirm the decision of the court regarding the re-opening. However, we vacate the award of attorney fees for the reasons which follow.
The issue raised in this appeal concerns the application of Ohio's laws of descent and distribution as they related in 1982 to illegitimate children.
The history of this case reveals that in 1980, Deborah Ferrante, mother of Angel Vaughan, filed a paternity action in the Cuyahoga County Juvenile Court seeking to establish William Vaughan as Angel's father. Vaughan admitted paternity and the juvenile court journalized its order to that effect on March 24, 1981. Two months later, on May 24, Vaughan died intestate.
Following Vaughan's death, on July 22, 1981, Jacqueline L. Bradshaw, his mother, filed an application in the probate court for authority to administer his estate naming herself and Angel Vaughan as the two heirs of the estate. The court heard the matter, granted the application on August 5, 1981, and required bonds totaling $71,000 which Safeco Insurance Company furnished.
Thereafter, on September 8, 1981, Deborah Ferrante, Angel's mother, filed an application to become her daughter's guardian which the probate court granted. However, on January 19, 1982, she filed her final account seeking discharge as Angel's guardian, representing to the court that the guardianship had been established to receive funds from the estate of William Vaughan, but conceded that no funds would be forthcoming as Angel was an illegitimate child of the decedent.
Thereafter, on February 22, 1982, Bradshaw filed a motion to delete Angel's name from the list of heirs, thereby asking the court to recognize her as the sole heir to the $35,000 Vaughan estate.
Subsequently, on March 8, 1982, the court discharged Ferrante as Angel's fiduciary, and on March 15, 1982, found Jacqueline Bradshaw to be the sole heir at law and next of kin of William Vaughan. Following settlement of the estate, the court discharged Bradshaw and Safeco on September 20, 1982.
The next development in the case came almost 16 years later, on May 13, 1998, when Angel moved to reopen the estate. The court referred the case to a magistrate who heard the matter, recommended that the motion be denied, and further recommended that attorney fees of $1125 and costs of $303 be awarded to Bradshaw. The court then adopted the magistrate's recommendation and Angel has now appealed presenting two assignments of error for our review. Her first assignment of error states:
I.
 THE PROBATE COURT ERRED WHEN OVERRULING APPELLANT'S MOTION TO REOPEN THE ESTATE AND FOR OTHER RELIEF.
Essentially, Angel Vaughan urges that because William Vaughan admitted paternity in the juvenile court in accordance with R.C.3111.17, the probate court should have permitted her to reopen his estate. She further contends her grandmother, Jacqueline Bradshaw, defrauded her out of a lawful inheritance and never gave her any notice of the pending probate court proceedings.
Again, in this case, we are asked to review the statutory treatment of illegitimate children in Ohio. Here, however, our court concerns itself with the judicial admission of paternity by William Vaughan in the juvenile court in accordance with R.C.3111.17, and we are asked by appellant to apply that admission to the probate court proceeding pursuant to R.C. 2105.18 and thereby order the court to reopen the estate and acknowledge Angel as an heir at law to Vaughan's estate. We cannot. This same issue has been previously considered by our court in an opinion authored by Judge Alvin I. Krenzler, who wrote in In re Martin (1977),51 Ohio App.2d 21, at 25-26:
 R.C. 2105.18 is subject to at least three possible interpretations. These are:
 (1) The basis of the probate court's decision is that legitimation of an illegitimate child is a matter for the state legislature which decided its method and manner when it enacted R.C. 2105.18. Legitimation under R.C. 2105.18 can be accomplished in two ways: by intermarriage of the natural parents before or after the birth of the child or by an application by the natural father acknowledging that he is the father, coupled with the consent of the mother, and approval by the probate court. These procedural steps are mandatory and unless accomplished, a child cannot be legitimated under R.C. 2105.18.
 (2) Appellant's argument is that whenever a man is determined to be a "reputed father" of the child in a bastardy proceeding in the juvenile court under R.C. 3111.17 the mother is given the authority to make the application required by R.C. 2105.18 on behalf of the natural father as his agent. This gives the probate court jurisdiction and authority to entertain the application to legitimate the child under R.C. 2105.18.
 (3) A third possible interpretation involves a constitutional issue. Since the Ohio Legislature enacted the legitimation statute, R.C. 2105.18, providing that an illegitimate child may be legitimated, all illegitimate children must be afforded an opportunity to be legitimated. This is mandated by the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Section 2, Article I of the Ohio Constitution. Legitimation cannot be limited to cases wherein the father first acknowledges that he is the natural father of the child.
 It is our view that the appellant's argument, the second alternative discussed above, that a juvenile court determination that a man is a "reputed father" under R.C. 3111.17 gives her authority to make application on his behalf and acknowledge that he is the "natural father" under R.C. 2105.18, is not valid.
 Juvenile court proceedings under R.C. 3111.17 are conducted only to determine a "reputed father" for the purpose of obtaining support of the child and the payment of medical expenses. There is nothing in R.C. 3111.17 that would convert a "reputed father" into a "natural father" for legitimation purposes under R.C. 2105.18. The legislature chose to distinguish between a "reputed father" for the purpose of support under R.C. 3111.17 and a "natural father" for the purpose of legitimation under R.C. 2105.18. Therefore, a determination of a "reputed father" under R.C. 3111.17 does not convert that finding into a finding of a "natural father," and this does not give the mother authority either as agent for the father or by operation of law to file the application for legitimation under R.C. 2105.18 and acknowledge that the alleged father is the "natural father." To adopt the appellant's argument would be to distort the foregoing statutes beyond their intended meaning and purpose.
In this case, we are mindful that the juvenile court did enter in its finding that William Vaughan was the "natural father" of Angel, but we recognize that the court lacked statutory authority to make that determination.
In accord with Martin, we adhere to the announced rule that an R.C. 3111.17 determination of the juvenile court regarding paternity is for purposes of child support and payment of medical expenses, and is not converted into a probate court legitimation proceeding pursuant to R.C. 2105.18.
We agree with the precept that it is a legislative function to make the laws and a judicial function to interpret them. If the legislature intended the juvenile court to render legitimation determinations, it could have enabled that court to make those determinations. However, it has not chosen to do so; likewise, by its express verbiage in R.C. 2105.18, it vested that authority in the probate court.
The record before us does not indicate that the probate court ever considered an application for legitimation under R.C.2105.18, and, hence, we cannot infer what action the court might have taken on such application if it had been filed.
For the foregoing reasons we do not believe this assignment of error is well taken, and it is overruled.
Angel Vaughan's second assignment of error states:
II.
THE PROBATE COURT ERRED IN GRANTING ATTORNEY FEES.
Here, Angel Vaughan argues the court improperly awarded attorney fees of $1125 and costs of $303 paid to Jacqueline Bradshaw. Our review of the magistrate's recommendation which the court adopted reveals that Angel failed to plead a statutory ground for her request to vacate the 1982 judgment entry and failed to provide clear and convincing evidence to support her allegations.
In order for a court to order payment of attorney fees, such must be authorized by statute or based on the court's determination that the party ordered to pay acted, "in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons."Sorin v. Bd. Of Edn. (1976), 46 Ohio St.2d 177.
R.C. 2323.51 provides in part, that a court "may award reasonable attorney's fees to any party to that action adversely affected by frivolous conduct," and it also defines the term, "frivolous conduct." It also requires the court to hold a hearing to examine the conduct and to determine the reasonableness of the fees.
In Riley v. Larger (1994), 95 Ohio App.3d 151, the court there determined that the decision of whether or not to award sanctions rests within the sound discretion of the trial court.
Here, however, the court held no hearing on sanctions nor made any finding of frivolous conduct and the only reference to deficiency is that made by the magistrate regarding the defective pleading and paucity of evidence. Poor pleading or weak evidence is not however a basis upon which to award attorney fees to a prevailing party. Without a hearing on sanctions and without a specific finding of frivolous conduct, no award of attorney fee could properly be made. See Gill v. Gill (Oct. 10, 1997), Hamilton App. No. 960610, unreported.
Accordingly, we have concluded this assignment of error is well taken and we vacate the award of attorney fees and costs.
Judgment accordingly.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J., CONCURS; DIANE KARPINSKI, J., CONCURS IN PART AND DISSENTS IN PART. (SEE ATTACHED CONCURRING AND DISSENTING OPINION.)
 __________________________________ JUDGE TERRENCE O'DONNELL
 CONCURRING and DISSENTING OPINION