[This decision has been published in *Ohio Official Reports* at 90 Ohio St.3d 544.]

IN RE ESTATE OF VAUGHAN.

[Cite as *In re Estate of Vaughan*, 2001-Ohio-222.]

*Probate—Descent and distribution—Juvenile court admission of paternity pursuant to former R.C. 3111.17 is not the equivalent of acknowledgement of paternity required by former R.C. 2105.18 for vesting child born out of wedlock with rights of inheritance from natural father.*

(No. 99-2203—Submitted September 27, 2000—Decided January 17, 2001.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 75790.

_____

SYLLABUS OF THE COURT

A juvenile court admission of paternity pursuant to former R.C. 3111.17 is not the equivalent of an acknowledgement of paternity required by former R.C. 2105.18 for vesting a child born out of wedlock with rights of inheritance from the natural father.

_____

DOUGLAS, J.

{¶ 1} In 1980, Deborah Ferrante filed in the Juvenile Court of Cuyahoga County a paternity proceeding against William R. Vaughan to establish that Vaughan was the father of Ferrante's daughter, Angel N. Vaughan.[1]  At a hearing

_____

1. While the record before the court is not entirely clear, there is no dispute among the parties that Ferrante's parentage action in juvenile court was filed pursuant to former R.C. 3111.17, which provided:

"If the accused in a proceeding under sections 3111.01 to 3111.24 of the Revised Code, confesses in court, in person or by counsel, that the accusation is true or if the jury finds him guilty, he shall be adjudged the reputed father of the child.  If the child is alive, the court shall adjudge that he pay to the complainant the sum the court finds necessary for her support and maintenance, and the necessary expenses caused by pregnancy and childbirth, together with costs of prosecution, and that a reasonable weekly sum be paid complainant for support and maintenance of the child until he becomes eighteen years of age.  In the event that the child is not born alive, or is not living at the time of the plea or finding of guilty, the court shall order the accused to pay the complainant the

held on October 10, 1980, Vaughan entered a plea denying that he was Angel's father. Subsequently, on March 24, 1981, Vaughan withdrew his plea and entered a plea acknowledging paternity. An order was entered by the juvenile court determining Vaughan to be the father of Angel, and judgment was rendered requiring Vaughan to pay Ferrante her necessary expenses for pregnancy and childbirth, together with her previous and current child care costs for Angel.

{¶ 2} On April 16, 1981, Vaughan filed objections in regard to the maternity and child support expenses. The objections were overruled on April 20, 1981. On April 28, 1981, Ferrante filed a motion to show cause, a motion to modify arrearage, and a motion to reduce arrearage to judgment. These matters were scheduled for a hearing on June 4, 1981. Vaughan died intestate on May 23, 1981. As a result of Vaughan's death, the juvenile court entered an order on June 4, 1981, abating the cause of action and canceling its order awarding Ferrante child care maintenance and support costs.

{¶ 3} On July 22, 1981, Vaughan's mother, appellee Jacqueline L. Bradshaw, filed with the Cuyahoga County Court of Common Pleas, Probate Division, an application to administer her son's estate. Bradshaw identified herself and Angel as heirs to Vaughan's estate. On August 5, 1981, the court appointed

sum the court finds necessary for her support and maintenance, and the necessary expense caused by pregnancy, including a reasonable amount for maintenance of the child until the child's death, and for the funeral expenses of the child. The court shall further require the reputed father to give security for the payment of support, maintenance, and necessary expenses of the complainant caused by the pregnancy and childbirth, together with the costs of prosecution. If the accused neglects or refuses to give such security, other than for the payment of costs, he shall be committed to the jail of the county, there to remain, except as provided in section 3111.18 of the Revised Code, until he complies with the order of the court. Upon a plea of guilty, a referee in the juvenile court may make the adjudications and orders required by this section, subject to approval of the court after notice to the parties. Execution may issue to the sheriff on the judgment of the juvenile court, as in cases of judgments for money in the court of common pleas. This section does not bar the prosecution of the accused for failure to support his child under any statute providing for prosecution and punishment for nonsupport of children. In any such prosecution for nonsupport, the adjudication that the accused is the reputed father of the child is admissible in evidence. The acquittal of the accused in a paternity proceeding under sections 3111.01 to 3111.24 of the Revised Code shall be a bar to any such prosecution." Am.Sub.S.B. No. 145, 136 Ohio Laws, Part I, 326, 392-393.

Bradshaw as administrator of Vaughan's estate and further ordered that a fiduciary's bond be posted. Appellee Safeco Insurance Company of America, as surety for Bradshaw, provided bonds in the amount of $71,000.

{¶ 4} On September 8, 1981, Ferrante filed an application requesting that the probate court appoint her as guardian of Angel. Upon the posting of the proper bond, Ferrante was appointed as Angel's guardian.

{¶ 5} On January 19, 1982, Ferrante filed her final account as fiduciary. In this account Ferrante requested that she be discharged from her duties as guardian of Angel and that the guardianship be terminated. Ferrante indicated to the probate court that the guardianship was originally set up to distribute funds to Angel from the estate of Angel's deceased father. However, in support of her request to terminate the guardianship, Ferrante conceded to the probate court that Angel, being the illegitimate child of Vaughan, was not entitled to receive funds from his estate.

{¶ 6} Thereafter, on February 22, 1982, Bradshaw, in her capacity as administrator, moved the probate court to correct the list of heirs of Vaughan by deleting Angel as an heir and declaring herself as the sole beneficiary of her son's estate.

{¶ 7} Subsequently, on March 8, 1982, the probate court granted Ferrante's request for discharge as Angel's guardian and terminated the guardianship. Then, on March 15, 1982, Bradshaw's motion to amend the list of heirs was granted and the probate court found her to be the sole heir at law of Vaughan's estate. Vaughan's estate was thereafter settled, and on September 20, 1982, the probate court discharged Bradshaw and Safeco.

{¶ 8} Almost sixteen years later, on May 13, 1998, appellant, Angel Vaughan, having reached the age of majority, filed in the Probate Division of the Court of Common Pleas of Cuyahoga County a motion to reopen the estate of William Vaughan. Appellant petitioned the probate court to reopen her deceased

father's estate and to vacate the judgment entry of March 15, 1982 amending the list of heirs. Appellant also moved the court for, among other relief, an order surcharging Bradshaw as former administrator of Vaughan's estate and Safeco as her surety.

{¶ 9} After a hearing before a magistrate of the probate court, the magistrate recommended that appellant's motion to reopen the estate be denied on the basis of res judicata. By entries dated December 9, 1998, the trial court accepted the magistrate's recommendation and adopted the magistrate's findings and conclusions as its own.

{¶ 10} On appeal, the Court of Appeals for Cuyahoga County, albeit for different reasons, affirmed the trial court's decision overruling appellant's motion to reopen the estate and for other relief.

{¶ 11} This cause is now before the court upon the allowance of a discretionary appeal.

{¶ 12} The primary issue for our consideration is whether a juvenile court admission of paternity pursuant to former R.C. 3111.17 is the equivalent of a probate court legitimation in accordance with former R.C. 2105.18. We are asked to decide whether William Vaughan's juvenile court admission of paternity conferred rights of inheritance upon appellant and thereby established her as the sole heir of Vaughan's estate.

{¶ 13} Former R.C. 2105.18 set forth the procedure whereby the natural father of a child born out of wedlock could confer upon that child a right of inheritance from the father by the father's acknowledgement of paternity in a county probate court. The version of R.C. 2105.18 applicable to this matter provided:

"When a man has a child by a woman and before or after the birth intermarries with her, the child is legitimate. The issue of parents whose marriage is null in law are nevertheless legitimate.

4

"The natural father of a child may file an application in the probate court of the county in which he resides, in the county in which the child resides, or the county in which the child was born, acknowledging that the child is his, and upon consent of the mother, or if she is deceased or incompetent, or has surrendered custody, upon the consent of the person or agency having custody of the child, or of a court having jurisdiction over the child's custody, the probate court, if satisfied that the applicant is the natural father, and that establishment of the relationship is for the best interest of the child, shall enter the finding of fact upon its journal, and thereafter the child is the child of the applicant, as though born to him in lawful wedlock."  Am.Sub.H.B. No. 1, 137 Ohio Laws, Part I, 1412, 1496.

{¶ 14} Appellant contends that Vaughan's open-court admission in juvenile court that he was her biological father resulted in the adjudication of the natural parent-child relationship and vested appellant with rights of inheritance by and through her father.  We disagree.

{¶ 15} Ohio law in the early 1980s established that only in certain circumstances could a child born out of wedlock inherit from the natural father. The law that was in effect at the outset of this dispute regarding such matters was clear.  A child born out of wedlock could obtain rights of inheritance from the natural father in a number of ways.  For instance, the natural father could designate the child as his heir at law (R.C. 2105.15), the natural father could adopt the child, or the natural father could provide for the child in his will.  See *Brookbank v. Gray* (1996), 74 Ohio St.3d 279, 282, 658 N.E.2d 724, 727.

{¶ 16} Further, and relevant to the question before us, Ohio's statutory scheme of descent and distribution, specifically former R.C. 2105.18, provided two additional methods whereby a father could legitimate a child of his born out of wedlock.  The first method was intermarriage of the natural parents of a child born out of wedlock.  The second required that the natural father, with the consent of the mother, formally acknowledge in probate court that he was the father of the child.

**{¶ 17}** In considering a formal acknowledgement pursuant to former R.C. 2105.18, the probate court was required to make certain determinations in addition to the mother's consent and the formal acknowledgement by the father. The probate court was also required to find that the applicant was indeed the child's natural father and that the establishment of the relationship was in the best interest of the child.

**{¶ 18}** Through former R.C. 2105.18, the General Assembly chose to vest authority to make those determinations with the probate court. Despite appellant's urging that we decide otherwise, the juvenile court lacked statutory authority to determine that Vaughan was the "natural" father of Angel. Juvenile court proceedings pursuant to former R.C. 3111.17 were conducted only for purposes of obtaining support and maintenance for the child and any necessary expenses of the mother for pregnancy and childbirth. See, generally, *In re Minor of Martin* (1977), 51 Ohio App.2d 21, 5 O.O.3d 141, 365 N.E.2d 892. The limited purpose of an adjudication pursuant to former R.C. 3111.17 was expressed in the statutory language, to wit: "if the accused * * * confesses * * * that the accusation is true or if the jury finds him guilty, he shall be adjudged the reputed father of the child." In contrast, in proceedings pursuant to former R.C. 2105.18, the judge was to determine that the applicant was the "natural father," and the effect of the judgment was that the child was "the child of the applicant, as though born to him in lawful wedlock." Had the General Assembly intended for paternity proceedings conducted in juvenile court to be the equivalent of a formal acknowledgement proceeding in probate court, it certainly could have so provided.

**{¶ 19}** Appellant further contends that she was denied notice and an opportunity to be heard regarding Bradshaw's motion to amend the list of heirs. This argument is not well taken. Even if we were to hold in favor of appellant on this issue, it would not alter the outcome of our disposition. The facts of this matter are clear. At no time prior to his death did William Vaughan confer upon appellant

any rights of inheritance, nor was appellant designated as an heir or acknowledged as a natural child of Vaughan according to Ohio's laws of descent and distribution then in effect. In fact, Deborah Ferrante, as appellant's mother and guardian, conceded as much by her withdrawal of guardianship in the probate court. In short, Vaughan's failure to comply with the requirements of former R.C. 2105.18 during his lifetime is the overriding factor weighing against appellant in this matter.

{¶ 20} Moreover, there is no dispute that Vaughan did not comply with the procedural requirements of former R.C. 2105.18. Nor is there any dispute concerning the validity of former R.C. 2105.18 in resolving issues of legitimacy and parentage of children born out of wedlock. In fact, central to appellant's argument is not that former R.C. 2105.18 is inapplicable, but that there is no distinction between the paternity proceedings that took place in juvenile court involving Vaughan and the requirements set forth in former R.C. 2105.18.

{¶ 21} That may or may not be the case. But that is not for us to decide. Suffice it to say that when both paternity and heirship in this matter were issues to be determined, there were separate statutes in existence that provided the procedures to be followed to establish paternity, legitimacy, and the right to inherit. For whatever reasons, William Vaughan did not comply with former R.C. 2105.18, and that ends the matter.

{¶ 22} Finally, appellant has asked us to construe the term "children" as used in R.C. 2105.06(A)[2] to include all natural or adopted children of the decedent regardless of whether they are born in or out of wedlock. However, given our disposition of this case on the basis of former R.C. 2105.18, we need not, even if

---

2. R.C. 2105.06, Ohio's statute of descent and distribution, provides:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance, in this state, the personal property shall be distributed, and the real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:

"(A) If there is no surviving spouse, to the children of the intestate or their lineal descendants, per stirpes[.]"

we were inclined to, now consider the definition of "children" as used in the statute of descent and distribution.

{¶ 23} Accordingly, we hold that a juvenile court admission of paternity pursuant to former R.C. 3111.17 is not the equivalent of an acknowledgement of paternity required by former R.C. 2105.18 for vesting a child born out of wedlock with rights of inheritance from the natural father.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY and COOK, JJ., concur.

VALEN, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

ANTHONY VALEN, J., of the Twelfth Appellate District, sitting for RESNICK, J.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 24} I respectfully dissent. I believe that a person's open acknowledgement in a court proceeding that he is a particular child's father and a court order that he is the natural father of the child should be sufficient to establish that child's right to inherit from her father.

{¶ 25} Despite the fact that William R. Vaughan's plea acknowledging paternity was made in *juvenile* court in a proceeding to establish paternity, it was a formal and legal acknowledgement that he was Angel's father. The effect of such an acknowledgement is to create a father/child relationship and an obligation on the part of the father to support and maintain the child until the age of majority. In some cases, once paternity is established with regular child support obligations, the father may also establish regular visitation with the child. The father and child may develop a close, loving relationship throughout their lives. When the probate court refuses to recognize such a close relationship for purposes of establishing the child's rights of inheritance, this shuts the door of inheritance in the child's face. To foreclose a child from inheritance through his or her father because a probate

court does not recognize the pronouncement of paternity by another state court flies in the face of fairness, justice, and common sense. I also believe the law does not mandate such an absurd result.

{¶ 26} I believe that the probate court had the authority and the obligation to take judicial notice of the juvenile court adjudication of paternity. The juvenile court's journalized entry of April 27, 1981, stated that counsel for Vaughan "withdrew defendant's previous plea of not guilty and entered a plea of guilty as to the paternity of this child. It is ordered by the Court that defendant is the natural father of complainant's child, Angel, born on January 16, 1980." A court may take judicial notice of a judgment rendered by another court within the state. Civ.R. 44.1; Evid.R. 201; *Morgan v. Cincinnati* (1986), 25 Ohio St.3d 285, 25 OBR 337, 496 N.E.2d 468; *Kirshner v. Shinaberry* (1989), 64 Ohio App.3d 536, 582 N.E.2d 22. In Ohio, juvenile and probate courts are merely different divisions or subdivisions of the same court. R.C. 2101.01, 2151.07, and 2301.03. In many jurisdictions, the juvenile and probate courts have the same judge. See Section 23, Article IV, Constitution. It is illogical that the probate division of the Cuyahoga County Court of Common Pleas would refuse to acknowledge the adjudication of Angel's paternity by the juvenile division of the same court so as to establish that child's entitlement to inherit.

{¶ 27} Nevertheless, the majority states that the juvenile court lacked statutory authority to determine that Vaughan was Angel's "natural" father and that, in 1982, only a probate court could adjudicate paternity for inheritance purposes in accordance with former R.C. 2105.18. Yet the majority agrees that a child born out of wedlock may obtain rights of inheritance from the natural father *in a number of ways*. The plain language of former R.C. 2105.18 did not indicate that it was the *exclusive* means of establishing an illegitimate child's right to inherit.

{¶ 28} Here, Vaughan entered a plea admitting paternity. Even if the juvenile court's adjudication of paternity for child support purposes is insufficient

for the probate court to establish the right of Angel to inherit from her father, the probate court should have *formally accepted* Vaughan's own admission made in a court proceeding. Consequently, I believe that a father's formal acknowledgement of paternity in a court proceeding and the juvenile court's order establishing him as the natural father should be sufficient to establish the child's right to inherit from her father. Therefore, I respectfully dissent.

VALEN and PFEIFER, JJ., concur in the foregoing dissenting opinion.

_____

*Lester S. Potash* and *Arlene N. Potash*, for appellant, Angel Vaughan.

*Hahn, Loeser & Parks* and *Neil K. Evans*, for appellee, Safeco Insurance Company of America.

_____